UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIELLE WESTFALL,

      Plaintiff,

v.                     Case No. 8:13-cv-2934-T-33TGW

NATIONAL CHECK RESOLUTION, INC.,

      Defendant.

_____/

**ORDER**

This matter comes before the Court pursuant to Plaintiff Danielle Westfall's Motion for Default Judgment (Doc. # 8), filed on March 25, 2014. For the reasons stated below, the Court grants the Motion.

**I.**   **Background**

On November 19, 2013, Danielle Westfall filed this action against Defendant National Check Resolution, Inc. alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.55, *et seq.* ("FCCPA"). (Doc. # 1).

According to the Complaint, National Check Resolution contacted Westfall in an attempt to collect a debt on behalf of another company. (Id. at ¶¶ 10, 12). The alleged debt

arises "from a personal loan which was for personal, family and household purposes." (<u>Id.</u> at ¶ 13).

In collecting this debt, National Check Resolution placed "at least one telephone call to [Westfall]." (<u>Id.</u> at ¶ 14). When National Check Resolution was unable to reach Westfall, National Check Resolution left voicemails for Westfall, which (1) address Westfall and (2) inform Westfall that she needs to call "Jamie Peterson at telephone number (888)-254-9918 and reference case number 197967." (<u>Id.</u> at ¶¶ 15-16).

However, according to the Complaint, National Check Resolution's voicemails "failed to meaningfully disclose the caller's identity." (<u>Id.</u> at ¶¶ 17-18). Furthermore, Westfall submits that National Check Resolution's voicemails withheld the true nature of its call - to collect a debt – "in order to deceive [Westfall] into calling [National Check Resolution] so that it could engage in pressured conduct to elicit monies from [Westfall]." (<u>Id.</u> at ¶ 19).

Westfall posits that National Check Resolution "use[d] pseudo legal terminology, even going as far as saying that [National Check Resolution] will be 'stopping by your residence and place of employment, have a valid ID for service purposes,' implying that [Westfall] was to be served with a

2

lawsuit." (Id. at ¶ 20). According to Westfall, National Check Resolution has not filed a lawsuit against Westfall, and National Check Resolution's threat of service of process was an "empty threat designed to intimidate [Westfall] into placing a return call to [National Check Resolution]." (Id. at ¶ 21). National Check Resolution further "threatened to show up at [Westfall's] residence and to continue to harass [Westfall] until [Westfall] pays the alleged debt." (Id. at ¶ 22).

Westfall initiated this action on November 19, 2013. (Doc. # 1). Westfall effected service of process on National Check Resolution on December 10, 2013. (Doc. # 4). National Check Resolution failed to respond to the Complaint. As a result, on February 17, 2014, Westfall moved for the entry of Clerk's default (Doc. # 5), and the Clerk issued its entry of default against National Check Resolution on February 18, 2014 (Doc. # 6). Thereafter, on March 12, 2014, this Court entered an Order directing Westfall to move forward with her application for default judgment against National Check Resolution. (Doc. # 7). Westfall filed the present Motion on March 25, 2014. (Doc. # 8). National Check Resolution has failed to file a response in opposition to the Motion.

## II.  Legal Standard

3

Federal Rule of Civil Procedure 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). DirecTV, Inc. v. Griffin, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003).

The mere entry of a default by the Clerk does not, in itself, warrant the Court entering a default judgment. See Tyco Fire & Sec. LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007) (citing Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, a Court must ensure that there is a sufficient basis in the pleadings for the judgment to be entered. Id. A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact and bars the defendant from contesting those facts on appeal. Id.

III. **Discussion**

A. **Liability**

Westfall initiated this action alleging several violations of the FDCPA and FCCPA. See (Doc. # 1).

4

## 1.  Fair Debt Collection Practices Act

In order to prevail on a FDCPA claim, a plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debtor collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Fuller v. Becker & Poliakoff, P.A., 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002)(quoting Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000)).

### a. Collection Activity Arising from a Consumer Debt

The initial determination - whether Westfall has been the object of a collection activity arising from a consumer debt - has two requirements. Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011). First, there must be collection activity. Id. Second, this activity must relate to a consumer debt. Id. Each requirement is discussed below, starting with collection activity.

The "FDCPA does not expressly define 'collection activity.'" LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193 n.15 (11th Cir. 2010). Nonetheless, "[w]hile the statute contains no clear definition of what constitutes a 'debt collection activity,' courts, in attempting to effect the

5

purpose of the FDCPA, are lenient with its application." Sanz
v. Fernandez, 633 F. Supp. 2d 1356, 1359 (S.D. Fla. 2009)
(citing Heintz v. Jenkins, 514 U.S. 291, 293-96 (1995)).

The Complaint alleges that National Check Resolution
placed "at least one telephone call" to Westfall attempting
to collect a debt on behalf of another company. (Doc. # 1 at
¶¶ 12, 14). This Court finds that this telephonic
communication, which was aimed at collecting a debt,
constitutes collection activity.

The Court next turns to whether the collection activity
was aimed at collecting a consumer debt. Pursuant to 15 U.S.C.
§ 1692a(5), a debt is "any obligation or alleged obligation
of a consumer to pay money arising out of a transaction . .
. [that is] primarily for personal, family, or household
purposes." Thus, the FDCPA is limited to "consumer debt,"
Heintz, 514 U.S. at 293, and does not cover business debts,
Lingo v. City of Albany Department of Community & Economic
Development, 195 F. App'x 891, 893 (11th Cir. 2006).

In her Complaint, Westfall asserts that National
Resolution Check attempted to collect a debt on behalf of
another company, which "arises from a personal loan which was
for personal, family and household purposes." (Id. at ¶¶ 12-
13). Upon consideration, the Court finds that the well-pled

6

allegations in the Complaint demonstrate that the alleged debt constituted a consumer debt. Accordingly, Westfall has established the first element of her FDCPA claim — there was collection activity of a consumer debt.

### b. Debt Collector

A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." See 15 U.S.C. § 1692a(6). According to the Complaint:

> [National Check Resolution] is a business entity . . . [that] uses instrumentalities of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . .

(Id. at ¶¶ 8-9).

Taking the well-pled allegations in the Complaint as true, the Court concludes that Westfall has established that National Check Resolution is a debt collector, and thus, Westfall has satisfied the second element of her FDCPA claim.

### c. Acts Prohibited under the FDCPA

In her Motion, Westfall indicates that National Check Resolution violated 15 U.S.C. §§ 1692d, 1692d(6), 1692e, 1692e(5), 1692e(10), and 1692e(11). The Court will address each allegation in turn.

### i.   **15 U.S.C. §§ 1692d & 1692d(6)**

15 U.S.C. § 1692(d) states:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. §§ 1692d and 1692d(6).

Westfall alleges that National Check Resolution engaged in a campaign of harassment towards Westfall in an effort to collect a consumer debt:

> [National Check Resolution] placed telephone calls without disclosing that the caller was a debt collector or calling to collect a debt, implied that [National Check Resolution] would be filing a lawsuit against [Westfall] without the intent to do so and threatened to show up at [Westfall's]

8

> residence to continue harassing [Westfall] until
> [Westfall] paid the alleged debt.

(Doc. # 8 at 5). The Court finds that the well-pled
allegations in the Complaint, taken as true, make evident
that National Check Resolution engaged in conduct that
harassed, oppressed, or abused Westfall in violation of 15
U.S.C. § 1692d and § 1692d(6).

**ii.** **15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), & 1692e(11)**

According to 15 U.S.C. § 1692e,

> A debt collector may not use any false, deceptive,
> or misleading representation or means in connection
> with the collection of any debt. Without limiting
> the general application of the foregoing, the
> following conduct is a violation of this section:
>
>                      * * *
> (5) The threat to take any action that cannot
> legally be taken or that is not intended to be
> taken.
>
>                      * * *
>
> (10) The use of any false representation or
> deceptive means to collect or attempt to collect
> any debt or to obtain information concerning a
> consumer.
>
>                      * * *
>
> (11) The failure to disclose in the initial written
> communication with the consumer and, in addition,
> if the initial communication with the consumer is

> oral, in that initial oral communication, that the
> debt collector is attempting to collect a debt and
> that any information obtained will be used for that
> purpose, and the failure to disclose in subsequent
> communications that the communication is from a
> debt collector, except that this paragraph shall
> not apply to a formal pleading made in connection
> with a legal action.

15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692e(11).

Westfall's Complaint alleges that National Check Resolution's voicemails "failed to meaningfully disclose the caller's identity" and withheld the true nature of the call – to collect a debt. (Id. at ¶¶ 17-19). According to Westfall, this was done "in order to deceive [Westfall] into calling [National Check Resolution] so that it could engage in pressured conduct to elicit monies from [Westfall]." (Id. at ¶ 19).

Furthermore, Westfall submits that National Check Resolution "use[d] pseudo legal terminology, even going as far as saying that [National Check Resolution] will be 'stopping by your residence and place of employment, have a valid ID for service purposes, implying that [Westfall] was to be served with a lawsuit." (Id. at ¶ 20). However, according to Westfall, National Check Resolution has not filed a lawsuit against Westfall, and National Check

Resolution's threat of service of process was an "empty threat designed to intimidate [Westfall] into placing a return call to [National Check Resolution]" (Id. at ¶ 21). Therefore, the well-pled allegations in the Complaint, taken as true, demonstrate that National Check Resolution violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692e(11).

Accordingly, as the well-pled allegations demonstrate the elements necessary to prove a FDCPA claim, the Court finds that Westfall has established that she is entitled to a default judgment against National Check Resolution on her FDCPA claims.

### 2.   Florida Consumer Collection Practices Act

To state a claim under the FCCPA, the plaintiff must establish that the defendant:

> (7) Willfully communicate[d] with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage[d] in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.
>
> * * *
>
> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

11

<u>See</u> Fla. Stat. §§ 559.72(7) and (9).[1]

As mentioned above, the Complaint demonstrates that National Check Resolution engaged in harassment toward Westfall in its efforts to collect Westfall's alleged consumer debt. Namely, National Check Resolution, would call Westfall to collect the debt and leave voicemails without disclosing the caller's identity or the true nature of the call. (Doc. # 1 at ¶¶ 17-18). In addition, National Check Resolution "use[d] pseudo legal terminology," implying that a lawsuit would be initiated against Westfall. (<u>Id.</u> at ¶ 20). Moreover, the Complaint exhibits that National Check Resolution further "threated to show up at [Westfall's] residence and to continue to harass [Westfall] until [Westfall] pays the alleged debt." (<u>Id.</u> at ¶ 22). Therefore, the Court finds that the well-pled allegations, taken as true, establish a violation of Fla. Stat. §§ 559.72(7) and (9).

Based upon the Clerk's entry of default, the well-pled factual allegations in the Complaint, and the Motion itself, the Court determines that Westfall's allegations support a

---

[1]     The Court notes that the Complaint fails to specify the particular FCCPA provisions National Check Resolution violated. Nonetheless, the Court has independently reviewed the relevant statute and the language set forth in the Complaint and construed the Complaint to assert violations of Fla. Stat. §§ 559.72(7) and (9).

finding that National Check Resolution violated 15 U.S.C. §§ 1692d, 1692d(6), 1692e, 1692e(5), 1692e(10), and 1692e(11), as well as Fla. Stat. §§ 559.72(7) and (9). As such, Westfall's Motion is granted and a hearing on this matter is not needed.

**B. <u>Damages</u>**

Pursuant to 15 U.S.C. 1692k,

(a) Amount of damages

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of –

    (1)  any actual damage sustained by such person as a result of such failure;

    (2)  (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000 . . .

                    * * *

    (3)  in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. . . .

(b) Factors considered by court

In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors –

> (1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional. . . .

15 U.S.C. § 1692k. Furthermore, Fla. Stat. § 559.77(2) states in pertinent part:

> (2) Any person who fails to comply with any provision of [Fla. Stat. § 559.72] is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with [Fla. Stat. § 559.72], the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional. . . .

Fla. Stat. § 559.77(2).

Westfall has alleged, and National Check Resolution is deemed to have admitted, that (1) National Check Resolution placed telephone calls without disclosing that the caller was a debt collector or calling to collect a debt, (2) National Check Resolution implied that it would be filing a lawsuit against Westfall without the intent to do so, and (3) National Check Resolution threatened to show up at Westfall's residence to continue harassing Westfall until Westfall paid the alleged debt. (Doc. # 8 at 6). According to Westfall,

"[National    Check    Resolution's]    egregious    conduct    was therefore   in   clear   violation   of   [15   U.S.C.]   §§   1692d, 1692d(6),   1692e,   1692e(5),   1692e(10),   and   1692e(11)   of   the FDCPA and § 559.72 of the FCCPA." (Id.).

Furthermore,   Westfall   submits   that   "[National   Check Resolution's]   conduct   was   intentional,   as   there   is   nothing   to suggest   that   [National   Check   Resolution's]   behavior   was unintentional or the result of a mistake." (Id.). Therefore, this Court finds that pursuant to 15 U.S.C. 1692k, Westfall is entitled to statutory damages in the amount of $1,000.00 for   National   Check   Resolution's   violations   of   the   FDCPA. Additionally, pursuant to Fla. Stat. § 559.77(2), this Court finds   that   Westfall   is   entitled   to   $1,000.00   in   statutory damages   for   National   Check   Resolution's   violation   of   the FCCPA.

## C. Attorneys' Fees

Westfall further requests an award of attorneys' fees in the amount of $2,708.60 and costs in the amount of $465.00. Westfall's   counsel   contends   that   to   date,   8.2   hours   of attorney and paralegal time have been expended in prosecuting this   action,   which   are   "reasonable   and   commensurate   with [counsels']   experience   in   the   field   of   consumer   protection." (Doc. # 8 at 13). Specifically,

15

[Westfall] seeks to recover attorney's fees for Shireen Hormozdi at a rate of $290.00 per hour for .8 hours, attorney's fees for Ryan Lee at a rate of $387.00 per hour for 5.8 hours, and fees for work by paralegals at $145.00 per hour for 1.6 hours.

(Id.).

Upon review of Westfall's Motion and the accompanying exhibits and declarations by Westfall's counsel (Doc. ## 8-6, 8-7, 8-8), the Court determines that the attorneys' fees requested are excessive. Therefore, although the Court finds it appropriate to approve the proposed costs incurred, the Court reduces the attorneys' fees requested by 30%.

This Court is afforded broad discretion in addressing attorneys' fees issues. See Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001)("Ultimately, the computation of a fee award is necessarily an exercise of judgment because there is no precise rule or formula for making these determinations.")(internal citation omitted). The fee applicant bears the burden of establishing entitlement to the hours requested as well as to the hourly rate. Webb v. Bd. of Educ. of Dyer Cnty., 471 U.S. 234, 242 (1985). Thus, the fee applicant must produce satisfactory evidence that the requested rate is within the prevailing market rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

16

Further, the fee applicant must support the number of hours worked. Id.  If an attorney fails to carry his or her burden, the Court "is itself an expert on the question [of attorneys' fees] and may consider its own knowledge and experience concerning reasonable and proper fees." Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988).

In determining that an across-the-board fee reduction of 30% is warranted, the Court has given great consideration to the following well-known factors: the time and labor required, the novelty and difficulty of the questions presented, and the preclusion of other employment by the attorney due to the acceptance of the case.[2]

This case was neither complex nor labor-intensive. This case did not proceed to trial, and in fact, Westfall's counsel was not required to participate in any hearings, draft any dispositive motions, or participate in any significant amount of discovery. Furthermore, this case did not present novel or difficult questions for the Court or counsel. Concerning the issue of preclusion of other employment, the Court notes that

---

[2]   The Court recognizes that the present Order does not address each and every one of the factors set forth in Johnson v. Ga. Highway Exp. Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), in detail. Nevertheless, the Court has given due consideration to each factor in reaching the decision to reduce counsels' fees.

this case was in its infancy; the case has been pending for approximately four months and consumed only 6.6 hours of attorney time and 1.6 hours of paralegal time. It can hardly be said that acceptance of the present action precluded Westfall's counsel from accepting and working on other cases.

This Court acknowledges that Westfall's counsel has vast experience and training in the field of consumer protection. However, the attorneys' fees requested are excessive given the circumstances surrounding this action. Therefore, for the reasons specified above, the Court applies an across-the-board reduction of 30% to the requested fee of $2,708.60, for an adjusted fee award of $1,896.02. Westfall's counsel is entitled to $465.00 in costs. Thus the total award of fees and costs amounts to $2,361.02.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff Danielle Westfall's Motion for Default Judgment (Doc. # 8) is **GRANTED.**

(2) The Clerk is directed to enter judgment in favor of Plaintiff Danielle Westfall and against Defendant National Check Resolution, Inc. in the amount of **$4,361.02**, which includes $2,000.00 for statutory

damages, $1,896.02 for attorneys' fees, and $465.00 for costs.

(3)   Upon entry of judgment, the Clerk is directed to **CLOSE THIS CASE**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 16th day of April, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: All counsel and parties of record